ILLINOIS PSYCHOLOGICAL ASSOCIATION, Dr. Jean J. Rossi, and Dr. John R. Day, Plaintiffs,

v.

Marshall FALK, Alex Spadoni, Bernard Turnock, Robert Schinderle, Dave McConkey, Jim Malloy, Ann Kiley, Martha Fritz, Dale Smith, Daniel Michalec, Lester Dugas, Ed Siebert, Christopher Cohen, Edward Duffy, the Illinois Department of Public Health, and the Hospital Licensing Board, Defendants.

No. 86 C 2514.

United States District Court, N.D. Illinois, E.D.

June 26, 1986.

 

Michael R. Levinson, Mark A. Orloff, Levinson & Orloff, Chicago, Ill., for plaintiffs.

Colleen McLaughlin, Atty. Gen. of Illinois, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

DUFF, District Judge.

Plaintiffs allege that the Illinois Department of Public Health (IDPH) has erroneously interpreted a state regulation to exclude psychologists from membership on hospital medical staffs, and unlawfully amended that regulation to conform it to this interpretation. Plaintiffs, the professional association of Illinois psychologists and two individual psychologists who are members of hospital medical staffs in Illinois, contend that this conduct infringes their rights under the Due Process and Equal Protection clauses of the Fourteenth Amendment, and violates the Illinois Administrative Procedure Act, Ill.Rev.Stat. ch. 127, ¶ 1001 *et seq.*

The case comes before the court on plaintiffs' motion for a preliminary injunction. Plaintiffs seek to bar defendants from enforcing the regulation as interpreted, and from filing with the Illinois Secretary of State a "clarifying amendment" to that regulation allegedly adopted in violation of the Illinois Administrative Procedure Act. The court has considered the pleadings and memoranda, documentary evidence, and several days of testimony and argument.

## BACKGROUND

Membership on a hospital's medical staff is significant because only persons on the medical staff may admit patients, order medical treatment, and vote on hospital policies. 77 Ill.Admin.Code §§ 250.310; 250.320; 250.330. Since 1976, § 250.150 of the Hospital Licensing Requirements, promulgated by the IDPH with the approval of the Hospital Licensing Board (HLB), has defined medical staff as:

[A]n organized body composed of individuals granted the privilege by the governing authority of the hospital to practice in the hospital. Any of the following who are granted practice privileges by a hospital shall be placed on the hospital's Medical Staff: persons who are graduates of a college or school approved or recognized by the Illinois Department of Registration and Education, and who are currently licensed by the Department as a Doctor of Medicine, M.D.; Doctor of Osteopath, D.O.; Doctor of Dental Surgery, D.D.S.; or Doctor of Podiatric Medicine, D.P.M.

On July 29, 1985, IDPH director Dr. Bernard Turnock informed HLB members by letter that, "after careful review of the Requirements, minutes of the Hospital Licensing Board meetings, and memoranda prepared by the Department's legal staff addressing the issue," he had concluded that § 250.150 limits medical staff membership to physicians (including medical doctors and osteopaths), dentists, and podiatrists. Dr. Turnock's letter to the HLB, attached to the court's opinion as Appendix A, also proposed amending § 250.150 to clarify its language consistent with this conclusion. Two days later, the HLB voted to concur with Dr. Turnock's interpretation.

The IDPH subsequently adopted the proposed clarifying amendment. It did so in the course of a rulemaking proceeding already underway when Dr. Turnock issued his interpretation of § 250.150. Nothing in the notice of rulemaking that initiated this proceeding on June 25, 1985 indicated that the IDPH planned to alter the categories of practitioners permitted to serve on hospital medical staffs, or to adopt Dr. Turnock's forthcoming proposal to amend § 250.150. Of the two responses received to the notice of rulemaking, neither addressed the issue of whether medical staff membership is or should be limited to physicians, dentists, and podiatrists.

The IDPH has not enforced Dr. Turnock's interpretation of § 250.150 in the year following its announcement. Instead, the IDPH plans to implement the clarifying amendment beginning June 27, 1986. If for any reason it is precluded from enforcing that amendment, however, the IDPH will on the same date begin enforcing Dr. Turnock's interpretation of the existing language of § 250.150. As of June 27, therefore, hospitals will be required to remove psychologists from medical staffs or risk revocation of their licenses.

Plaintiffs filed this three-count action for damages and preliminary and permanent injunctive relief on April 11, 1986. Count I alleges that enforcement of Dr. Turnock's interpretation of § 250.150 would abridge plaintiffs' liberty and property interests under the Due Process and Equal Protection clauses. Count II alleges a violation of plaintiffs' procedural due process rights arising from the interpretation and amendment of § 250.150 without notice and hearing. Finally, Count III, a pendent claim, alleges that adoption of the clarifying amendment violated the Illinois Administrative Procedure Act.

## FINDINGS OF FACT

The parties' evidence and arguments dealt primarily with whether the existing language of § 250.150 is ambiguous in light of its origin, context, and application, and whether Dr. Turnock's interpretation of that language is correct. That focus is understandable in light of the fact that psychologists' eligibility for medical staff membership can only be assured at this juncture by an injunction against enforcement of Dr. Turnock's interpretation of the existing language. An injunction that merely prohibited the IDPH from promulgating the clarifying amendment, while leaving it free to interpret the existing language to exclude psychologists from medical staffs, would be of little benefit to plaintiffs. The following findings of fact summarize the evidence relevant to plaintiffs' constitutional claims:

1. The plain language of § 250.150 is not conclusive as to whether psychologists may serve on hospital medical staffs. The statement that "[a]ny of the following who

are granted practice privileges shall be placed on the hospital's medical staff ..." appears to leave open the possibility that, so long as a practitioner is not a physician, dentist, or podiatrist who has been granted practice privileges, the hospital has discretion to include that practitioner on its medical staff. The language does not expressly grant this discretion, however, and it is possible to interpret the list of practitioners as an exclusive one.

2. The origins of the present language in § 250.150 contain conflicting evidence as to the exclusivity of the list of practitioners in that section. Prior to 1976, the Hospital Licensing Requirements defined medical staff as "composed only of physicians and dentists...." Elimination of the word "only" in the amended language suggests the drafters may have intended to eliminate the exclusivity of medical staff membership.

Minutes of HLB meetings leading up to the adoption of that amendment, however, indicate that the HLB's primary concern in amending the Requirements was to end the routine exclusion of podiatrists and osteopaths from medical staffs. The minutes offer little or no support for the proposition that the HLB intended to open medical staff membership to every practitioner authorized to practice within a hospital.

3. The regulatory and statutory context of § 250.150 offers evidence supporting each party's interpretation of the definition of medical staff. A comprehensive review of the statutes and regulations cited by the parties is unnecessary here, but several examples are in order. The Illinois Mental Health and Developmental Disabilities Code permits psychologists to serve as facilities directors of mental health facilities, Ill.Rev.Stat. ch. 91 ½, § 1–104, and authorizes facilities directors to admit patients, *id.* at § 3–300, and supervise treatment, *id.* at § 1–104. Both of these functions are ones that the Hospital Licensing Requirements permit only medical staff members to perform, which suggests that the Legislature might not intend to exclude psychologists from hospital medical staffs.

On the other hand, § 250.320 of the Hospital Licensing Requirements provides that patients admitted by dentists and podiatrists "shall be under the care of both the admitting medical staff member and a physician who is also a medical staff member." No such requirement exists for psychologists. Because psychologists lack the medical training of either dentists or podiatrists, it seems reasonable to infer that the drafters of § 250.320 would have imposed a similar co-admission requirement on psychologists if they intended psychologists to have any admitting privileges whatsoever.

In a similar vein, § 250.310(b) provides that "[r]egardless of any other categories (divisions of the medical staff) having privileges in the hospital, there shall be an active staff which must include physicians and may also include dentists and podiatrists, properly organized, which shall perform all the organizational duties pertaining to the medical staff." This section does not give hospitals the discretion to include practitioners other than physicians, dentists, and podiatrists on the active staff, despite the relatively non-technical nature of the active staff's quality control and policy-making duties. This arguably supports the view that medical staff membership is limited to physicians, dentists, and podiatrists.

4. Since 1976, the IDPH has sporadically enforced § 250.150 to require hospitals to exclude practitioners other than physicians, dentists, and podiatrists from their medical staffs. On at least four occasions the IDPH informed hospitals that the presence on their medical staffs of practitioners other than physicians, dentists, and podiatrists violated § 250.150. One of these four hospitals complied with a recommendation to remove such practitioners from its medical staff. Another hospital informed the IDPH that it disagreed with its interpretation of § 250.150 and would not remove psychologists from its staff in the absence of further action by the IDPH. The IDPH never responded. The actions of the two remaining hospitals are not in evidence.

5. Budget cuts in the early 1980s reduced the enforcement capacity of the IDPH and left it unable to regularly survey all hospitals for compliance with the Hospital Licensing Requirements. The IDPH delegated the bulk of that task to a national organization known as the Joint Committee on the Accreditation of Hospitals (JCAH), but continued to perform a randomly selected 10 percent of all hospital surveys. In surveying hospitals, the JCAH monitors compliance with its own standards, which do not exclude hospitals from medical staffs.

6. The IDPH has never publicly taken the position that psychologists may serve on hospital medical staffs. Nor, however, has it ever attempted to revoke the license of a hospital because of the presence on its medical staff of practitioners other than physicians, dentists, and podiatrists. Psychologists presently serve on the medical staffs of approximately 12 Chicago area hospitals.

7. Members of the HLB discussed the apparent ambiguity in the definition of medical staff at a meeting on January 23, 1985, and requested the HLB's Allied Health Professions subcommittee to examine the issue. The subcommittee held a series of meetings during the winter and spring of 1985, which addressed the question of whether medical staff membership is restricted to physicians, dentists, and podiatrists. Minutes of those meetings show that plaintiff Illinois Psychological Association (IPA) participated actively in the extensive debate on this issue. The IPA urged the HLB to interpret the definition to permit medical staff membership by psychologists, or, alternatively, to amend the definition to achieve such a result. During the period when these meetings were taking place, two members of the IDPH legal staff prepared opinions interpreting the definition of medical staff. The opinions reached different conclusions as to whether the terms of the definition limit membership to physicians, dentists, and podiatrists.

## DISCUSSION

The court should grant a preliminary injunction

> ...when the plaintiff has suffered an irreparable injury for which there is no adequate remedy at law and where the balance of the equities, reflecting the relative harm to each party entailed in granting or denying the injunction, the probable outcome of a trial on the merits, and the public interest, is determined by the district judge to favor the movant.

*Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1441 (7th Cir. 1986) *See also American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986).

### A. *Irreparable Injury*

Plaintiffs are correct that the discharge of psychologists from medical staffs pursuant to an unlawful interpretation or amendment of § 250.120 would constitute an irreparable injury for which there is no adequate remedy at law. The evidence shows that the loss of admitting privileges and authority to order medical treatment in a hospital setting would reduce psychologists' ability to compete for patients with psychiatrists, and could disrupt some existing patient relationships. Moreover, some psychologists might be excluded from participation in group health insurance programs that require participating professionals to be hospital staff members. It would be difficult or impossible to calculate the dollar value of these injuries.

### B. *Balance of Harms*

Plaintiffs are likewise correct that the balance of potential harms to the parties tips in their favor, at least with respect to an injunction barring defendants from enforcing Dr. Turnock's interpretation of § 250.150. While defendants would lose their medical staff positions if an injunction were denied, granting an injunction would merely delay the state's effort to clarify a regulation that has existed in its present posture for a decade without noticeable injury to the public health.

The balance of harms does not favor plaintiffs, however, with respect to an injunction that would only bar implementation of the clarifying amendment. If the state may lawfully interpret the existing language of § 250.150 to mean the same thing as the clarifying amendment, enjoining implementation of that amendment would not enable plaintiffs to continue to serve on medical staffs. In such circumstances a preliminary injunction would be unnecessary, and plaintiffs' interests would not be prejudiced by a more deliberate resolution of their claims concerning adoption of the amendment.

## C. *Likelihood of Success on the Merits*

Plaintiffs' likelihood of success on the merits is a more complex question, and is intertwined with considerations of the public interest. Plaintiffs raise three federal claims in Counts I and II: an equal protection claim, and substantive and procedural due process claims. The court considers the equal protection and due process claims in turn.

### 1. *Equal Protection*

The equal protection claim is weak. In order to prevail, plaintiffs must carry the heavy burden of establishing that the action of the IDPH is not rationally related to a legitimate state purpose. *See New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976).

Plaintiffs argue that no rational basis exists for a regulation that excludes psychologists from medical staffs but permits membership by podiatrists and dentists. The record indicates, however, that practitioners in each of the four categories listed in § 250.150 are licensed to treat patients fully within their areas of expertise. Physicians, dentists, and podiatrists all may prescribe medicines and perform procedures that invade the body. Psychologists may not. The state has a legitimate interest in confining the duties and privileges of hospital medical staff membership to persons who are unquestionably qualified for those responsibilities. The line must be drawn somewhere, and it is not irrational to draw that line where medical training ends.

### 2. *Due Process*

Plaintiffs' substantive and procedural due process claims depend on a common premise: that psychologists have a constitutionally protected interest in continued membership on hospital medical staffs. Plaintiffs support this premise by pointing to a series of Supreme Court decisions recognizing the existence of a property interest in continued employment where a right to that employment is secured by state statutes or rules. *See, e.g., Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972).

In *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), for example, the Court held that the decision of a state college to terminate a teacher protected by a *de facto* tenure program implicated the teacher's property interest in his continued employment, and invoked the procedural protections of the Due Process clause. Similarly, in *Cleveland Board of Education v. Loudermill, supra,* the Court held that the plaintiff had a property interest in his continued employment as a civil servant where state law prohibited dismissal of civil servants without cause. And in *Northeast Georgia Radiological Association v. Tidwell,* 670 F.2d 507 (5th Cir.1982), the Fifth Circuit held that continued membership on the medical staff of a county hospital rose to a protected property interest where the contract and staff by-laws "established 'the existence of rules or mutually explicit understandings'" concerning involuntary termination of staff membership, *id.* at 511.

In each of these cases the petitioners' claim to a property interest, and thus to due process protection against government interference with that interest, depended upon "a legitimate claim of entitlement" to continued enjoyment of a benefit. *Board*

*of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. A mere "unilateral expectation" that the government will permit continued enjoyment of a benefit is insufficient to give rise to a property right. *Id.*

No "legitimate claim of entitlement" exists here. From 1976 to the present, the definition of medical staff in § 250.150 repeatedly has been the subject of debate and conflicting interpretations, even within the IDPH and the HLB. Psychologists, through the IPA, have participated actively in this debate and argued strongly for an interpretation that permits them to serve on hospital medical staffs.

This interpretation is theirs to claim but not to have. On at least four occasions from 1976 to July 29, 1985, the IDPH informed hospitals that § 250.150 prohibits the presence on their medical staffs of practitioners other than those in the four specified categories. At the very least, the evidence shows that the question of whether § 250.150 permits psychologists to serve on hospital medical staffs has been an open one.

The ambiguity of the regulation and the absence of either an authoritative interpretation or effective enforcement may have created an opportunity for psychologists to become members of medical staffs. But by taking advantage of this opportunity, psychologists did not acquire constitutional protection against subsequent action by the IDPH to put its house in order. Neither § 250.150 itself nor any consistent governmental practice has unequivocally authorized psychologists to serve on hospital medical staffs.

An administrative agency charged with promulgating and enforcing regulations can only carry out those responsibilities if it has the power to make and act on reasonable interpretations of those regulations. Here, where both the regulation and its enforcement history are ambiguous, the IDPH did not infringe plaintiffs' property interests by determining, after careful study, that the regulation means one thing rather than another. Plaintiffs could not have had a legitimate expectation that the

ambiguity would be resolved in their favor. To rule otherwise would be to invite lawsuits by disappointed or frustrated groups every time an administrative agency interprets a statute or regulation, because interpretation is possible only where there is ambiguity.

Perhaps it would have been preferable for the IDPH to proceed otherwise in clarifying the ambiguous definition of medical staff. It could have sought guidance from the Legislature, or—as its counsel told the court it may yet do—initiated a formal rulemaking procedure of unquestioned legality. But where, as here, the IDPH acted within the bounds of reason in arriving at its interpretation, the court should not eagerly substitute its own sense of the public good for the Department's professional judgment, particularly in so delicately important an area as public health.

The court concludes that enforcement by the IDPH of an interpretation of § 250.150 excluding psychologists from medical staffs would not infringe plaintiffs' constitutionally protected interests. Plaintiffs' likelihood of success on the merits of their due process claims is therefore low.

### D. *Public Interest*

It would not serve the public interest for the court to enjoin the IDPH from acting on its reasoned and reasonable conclusion that § 250.150 limits membership on hospital medical staffs to physicians, dentists, and podiatrists. Strict enforcement of this limitation might minimally disrupt some relationships between patients and psychologists, because psychologists will be unable to admit patients to hospitals or to assume primary responsibility for their treatment in a hospital setting. On the other hand, the unrestrained presence on hospital medical staffs of persons without medical training creates a risk that unqualified persons could misuse their authority in a manner detrimental to patients' health.

The Illinois legislature has entrusted the supervision of hospitals to the IDPH. Because the Legislature is historically the ar-

biter of public policy, the public interest requires the court to respect that delegation where, as here, the Department's action is consistent with the public welfare.

## CONCLUSION

■ The public interest, as well as the low probability that plaintiffs will prevail on the merits, overcomes the fact that the balance of harms weighs in plaintiffs' favor, and requires the court to deny an injunction against enforcement of an interpretation of § 250.150 that excludes psychologists from hospital medical staffs.

Because the IDPH is free to interpret the existing language of § 250.150 to bar psychologists from medical staffs, a preliminary injunction against promulgation of the clarifying amendment would serve no purpose. The question of whether that amendment was properly adopted can be litigated through more ordinary channels without prejudice to the interests of either party. Restraint in enjoining promulgation of that amendment is particularly appropriate in light of the fact that plaintiffs' constitutional claims appear unlikely to survive a motion for summary judgment, and therefore if an injunction were to issue, it would do so solely on the basis of a pendent state claim.

The motion for a preliminary injunction is denied.

## APPENDIX A

STATE OF ILLINOIS

DEPARTMENT OF PUBLIC HEALTH

Bernard J. Turnock, M.D., M.P.H.

Director

July 29, 1985

Robert F. Schinderle, Executive Director
St. Joseph Medical Center
333 North Madison Street
Joliet, Illinois 60435

Dear Mr. Schinderle:

It is the position of the Department of Public Health that the current Hospital Li-censing Requirements are interpreted to mean that the medical staff of a hospital subject to the requirements of the Hospital Licensing Act may be comprised only of M.D. physicians, osteopathic physicians, podiatrists, and dentists. This conclusion was reached after careful review of the Requirements, minutes of the Hospital Licensing Board meetings, and memoranda prepared by the Department's legal staff addressing this issue.

Section 250.150 of the Requirements defines "medical staff" as:

an organized body composed of individuals granted the privilege by the governing authority of the hospital to practice in the hospital. Any of the following who are granted practice privileges by a hospital shall be placed on the hospital's Medical Staff: persons who are graduates of a college or school approved or recognized by the Illinois Department of Registration and Education, and who are currently licensed by the Department as a Doctor of Medicine, M.D.; Doctor of Osteopathy, D.O.; Doctor of Dental Surgery, D.D.S.; or Doctor of Podiatric Medicine, D.P.M.

The presumption that eligibility for medical staff membership is limited to those four classes of individuals is reflected in the following sections of the Requirements:

- 250.150—*Definitions:* Only "Dentist", "Podiatrist", and "Physician" are separately defined.

- 250.310(b)—*Medical Staff Organization:* The required "active staff" division of the medical staff "must include physicians and may also include podiatrists and dentists." No other types of professionals are listed as discretionary additions to the active staff.

- 250.320—*Admission and Supervision of Patients:* "Patients admitted by a *podiatrist* or a *dentist* shall be under

the care of both the *admitting medical staff member* and a *physician* who is also a medical staff member" (emphases added).

- 250.330—*Orders for Medications and Treatments:* "No medication or treatment shall be administered to a patient except on the written order of a member of the medical staff." No distinction is drawn between medical staff members who have medication privileges and those who do not. Only physicians, dentists and podiatrists are authorized to prescribe medication within the scope of their licenses. *Ill.Rev. Stat.* 1983, ch. Ill., pars. 4401 et seq., 2201 et seq., 4901 et seq.

That presumption can also be inferred from the actions and comments of the Hospital Licensing Board. Prior to 1976, only physicians and dentists were listed under the Hospital Licensing Requirements' definition of medical staff. Concern over the routine exclusion of podiatrists and osteopaths from medical staffs prompted an eighteen month study of possible revisions to the Requirements. The decision to include podiatrists and osteopaths in the medical staff definition was intended "not to prohibit appointment" of those individuals, suggesting that the absence of an individual's profession on the "list" would be tantamount to a prohibition.

The Hospital Licensing Requirements also recognize the concurrent rights of an eligible applicant to receive procedural due process guarantees, and of a hospital to exercise its discretion in staff selection decisions. Section 250.310 requires a hospital's bylaws to guarantee due process for applicants. *See also* Attorney General Opinion No. 84–004 (April 4, 1984). Both private and public hospitals are bound by their bylaws when reviewing staff applications. *Knapp v. Palos Community Hospital,* 135 Ill.App.3d 244 (1984).

However, a hospital may exclude one or more of the four "approved" classes of practitioners if it has elected not to provide those services within the hospital. Such a policy must be specified in hospital's by-laws. *Att.Gen.Op.* at 4, 9–13, *citing Dolan v. Galluzzo,* 77 Ill.2d 279, 281–82 (1979), Hospital Licensing Requirements, Section 250.310.

The distinction between "medical staff" and "allied health personnel" must also be articulated in the bylaws. Granting practice privileges to allied health professionals is a matter of hospital policy, subject to the restrictions provided in the Hospital Licensing Requirements.

The term of "practice privileges" may be used to describe the provision of services by both the medical and allied staff. However, only physicians, dentists and podiatrists with practice privileges are assigned to the medical staff. Therefore, a clarified definition of "medical staff" should read as follows:

The term "medical staff" means an organized body composed of the *following* individuals granted the privilege by the governing authority of the hospital to practice in the hospital: persons who are graduates of a college or school approved or recognized by the Illinois Department of Registration and Education, and who are currently licensed by the Department as a Doctor of Medicine, M.D.; Doctor of Osteopathy, D.O.; Doctor of Dental Surgery, D.D.S.; or Doctor of Podiatric Medicine, D.P.M.

Please apprise the members of the Subcommittee on Allied Health and the other members of the Hospital Licensing Board as to the Department's position regarding this issue. Should the Board concur with this construction then the Department will initiate amendatory rule-making action to adopt the clarifying language set forth above. In the event the Board does not concur, and believes the policy of the Department ought be different in this matter, then I would appreciate receiving the Board's po-

sition so that we may proceed to resolve this important issue.

I appreciate your interest and cooperation and look forward to the Board's response.

Sincerely,

s/ Bernard J. Turnock, M.D.

Bernard J. Turnock, M.D., M.P.H.
Director